# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1165-25

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

T.P.,[1]

    Defendant-Respondent.

_____

Argued May 11, 2026 – Decided July 14, 2026

Before Judges Natali and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 24-10-1247.

Monica do Outeiro, Assistant Prosecutor, argued the cause for appellant (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

Anthony Fazioli argued the cause for respondent.

---

[1] We use initials to protect the victim reporting the alleged sexual abuse under review in this appeal. R. 1:38-3(c)(12).

PER CURIAM

On leave granted, the State appeals from an October 21, 2025 Law Division order denying its motion to admit fresh complaint testimony concerning reports by the victim of several alleged sexual assaults perpetrated upon her by defendant T.P., made to her husband, sister, and mother. The State alleges that defendant committed these sexual assaults over a span of approximately 21 years, starting when the victim was a minor, aged thirteen, and ending approximately thirty days before the report was made to her family members and law enforcement when she was 34 years old. After our careful review of the record and application of the relevant legal principles, we affirm.

I.

We derive the factual and procedural background as set forth in the trial court's decision, which the State adopted in its merits briefing.

> [The victim] was born in or around 1988 and resided in her home with her parent and her older sister, C.H. In or around 1996, [d]efendant purchased the house across the street from [the victim's] family home. At some point thereafter, when [the victim] was around [thirteen] . . . years old, C.H. and [d]efendant began dating. Defendant befriended [the victim's] parents and started spending considerable time at [the victim's] family home.
>
> Defendant began grooming her almost immediately by being overly nice, praising her appearance, and giving

A-1165-25

her alcohol and other gifts. He also would find time to be alone with her, paying her to clean his home. At some point between 2001 and 2002, while C.H. and [d]efendant were having trouble in their dating relationship, [d]efendant told [the victim] that he had purchased a gift for her. Getting her alone under the guise of giving her the gift, [d]efendant allegedly told her that he had purchased a large henna tattoo to apply to her back. He convinced her to take off her shirt and bend over furniture so that he could apply the tattoo. [The victim] alleges that [d]efendant almost immediately began pulling down her pants, pinning her against the furniture. Claiming he was having trouble getting leverage to apply the tattoo, his hand went lower and lower until he digitally penetrated her anus and vagina.

[The victim] alleges that from that point on, [d]efendant engaged in unwanted sexual conduct and contact with her on an almost daily basis between 2001 and 2022, sometimes more frequently and sometimes less frequently. Because he lived across the street from [the victim] and her family and was dating [the victim's] sister, and because [the victim] was required to go across the street to clean [d]efendant's house for money, [the victim] felt compelled to do what [d]efendant wanted.

Defendant quickly became a constant part of [the victim's] life. He married C.H., was constantly at [the victim's] house, often had [the victim] over to his house, went back and forth between the houses, and was an integrated part of the extended family unit. The conduct allegedly escalated after [d]efendant and C.H. had their second child in or around 2005. [The victim's] parents ordered [the victim] to stay at [d]efendant and C.H.'s house while C.H. was in the hospital to help [d]efendant. While staying in the home at her parent's

3

A-1165-25

direction, Defendant allegedly digitally penetrated her, orally raped her, and vaginally raped her. [The victim] was approximately 17 years old and allegedly felt threatened by [defendant] and so was fearful to tell anyone.

[The victim] maintains that between the 2005 sexual assault and 2011, [d]efendant continued to touch her without her consent, to say sexually explicit things to her, and to engage in inappropriate conduct. Though she turned 18 in or around 2006, she alleges that she continued to be under [d]efendant's power and control, afraid to speak up about what had been happening to her. [The victim] alleged that in or around 2011, [d]efendant forced his way into her bedroom and digitally penetrated her. She alleges that he again broke into her room at night and digitally penetrated her in or around 2012.

Around that time, [the victim] married her husband. It appears that they may have lived outside of the family home for a time. [The victim's] father passed away in or around 2015. Around that time, [the victim] and her husband moved into [d]efendant's farmhouse. [The victim] was approximately 27 or 28 years old at the time. Around that time, [d]efendant allegedly apologized to her for what he had done to her when she was a child. [The victim] explained that she remained terrified by [d]efendant and worried about what would happen to her family if she told anyone about the abuse and so continued to hold his secret and to try to ignore [d]efendant's ongoing groping and unwanted physical touch.

Despite [d]efendant's purported apology, [the victim] advised that [d]efendant continued to grope her on occasion and to grab her buttocks. Defendant last grabbed her buttocks in or around July 2022, while [the

4

victim] was approximately 34 years old. In August 2022, around the time when her niece turned [thirteen] years old (i.e., the same age at which defendant allegedly began abusing [the victim]), [the victim] maintains that she had an emotional breakdown and became terrified that [d]efendant would begin abusing his daughter. She demanded to speak privately with her husband and, on or around August 21, 2022, [the victim] told her husband that she had been abused by [d]efendant. She then told C.H. and their mother. A month thereafter, on or around September 21, 2022, [the victim] reported [d]efendant's alleged conduct to the police.

. . . .

[The victim's husband] provided a statement to the police on September 21, 2022. In that sworn statement . . . [the victim's husband] advised that in August 2022, [the victim] disclosed that [d]efendant had been sexually abusing her. Specifically, in his statement, he advised that [the victim] had disclosed repeated and ongoing sexual abuse by [d]efendant, including digital penetration that occurred when [d]efendant was putting on the henna tattoo, an incident where he orally and vaginally raped [the victim], and two instances in or around 2007 when [defendant] allegedly broke into [the victim's] bedroom and digitally penetrated her, and other instances of inappropriate conduct involving sex toys.

. . . .

After disclosing the alleged abuse to her husband, [the victim] next approached her sister, C.H., who then was [d]efendant's [wife]. She did this in part because of her fear for the safety of the defendant and C.H. 's daughter. C.H. advised that [the victim] confided in her in or

5

around September 19, 2022. She identified the same incidences that [the victim] had disclosed to [the victim's] husband.

. . . .

[The victim] also told her mother, A.Z., about the alleged abuse in or around 2017. A.Z. provided a statement to the police on or about October 7, 2022. In that statement, A.Z. does not set forth wh[at] specific incidents, if any, [the victim] disclosed to her. A.Z. did, however, identify several observations she made that arguably corroborate [the victim's] statements.

Based on these reports, a grand jury indicted defendant on the following four counts: second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(l); and, fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(6). These counts are comprised of all the years of alleged abuse the victim suffered at the hands of the defendant from 2001, when she was thirteen years old, until 2022, when she was 34 years old, when she disclosed the alleged abuse to family members.

On June 26, 2025, the State moved to admit into evidence, as fresh complaint testimony, the August/September 2022 disclosures the victim made to her husband, sister, and mother. Following oral argument and briefing, on

October 1, 2025, the court issued an order, with an accompanying written opinion, denying the State's motion.

In its decision, relying on State v. Hill, the court found the standards the State was required to show in order to admit fresh complaint testimony were: (1) disclosure to a permissible confidant, (2) spontaneity and voluntariness, and (3) disclosure within a "reasonably contemporaneous" period after the alleged incident. 121 N.J. 150, 165 (1990). The court determined that the first two elements were satisfied because the disclosures were made to close family members and were spontaneous and voluntary, triggered by emotional distress when the victim's niece turned the same age as when the abuse allegedly began on the victim.

The court determined the primary issue was whether the disclosures were "reasonably contemporaneous" to the alleged acts, especially given the long span of alleged abuse and the delay in reporting. The court noted that New Jersey law requires a flexible, fact-sensitive analysis for child victims, recognizing that delays in disclosure may be explainable by age and circumstances. However, in this case, the court found the victim was an adult at the time of disclosure, had moved out, married, and lived independently from the alleged abuser. The court noted the similarity to the facts in State v. C.W.H.,

A-1165-25

465 N.J. Super. 574, 600 (App. Div. 2021), where a lengthy delay was found not to be reasonably contemporaneous.

The court determined based on the record and without expert testimony to explain the victim's delay in reporting, the State had not satisfied the "reasonably contemporaneous" requirement for the fresh complaint exception to the hearsay rule and denied the State's motion. However, the court clarified that the subject evidence may still be admissible through other evidential pathways, such as to rebut allegations of recent fabrication or as firsthand observations and if the defense raises claims of recent fabrication or improper motive at trial, the State may offer prior consistent statements from the declarant's husband, sister, and mother to rehabilitate her credibility. Additionally, the court stated these witnesses may testify about their firsthand observations, provided such testimony complies with the Rules of Evidence.

On appeal, the State proffers several arguments for reversal. First, it argues that the lower court misapplied the legal standard for admitting fresh complaint testimony. The State points out that New Jersey courts have routinely found disclosures made years after the end of abuse to be reasonably contemporaneous, citing cases where delays of one to three years were deemed reasonable. In this case, the delay was only about 30 days, which the State

A-1165-25

contends is well within the bounds of reasonableness, especially given the context of 21 years of ongoing abuse.

Second, the State asserts that the lower court erred by analogizing this case to C.W.H., where the delay in disclosure was 16 years. The State emphasizes that, unlike in C.W.H., the victim here never experienced a reprieve from the abuse and remained under the defendant's influence and physical proximity. The State argues that the facts found by the lower court actually support the reasonableness of the victim's delayed disclosure, given her ongoing fear and the defendant's continued presence in her life.

Third, the State challenges the lower court's finding that expert testimony was required to explain the delay in disclosure. The State, citing to State v. J.L.G., 234 N.J. 265 (2018), asserts that the law does not mandate expert testimony for the admission of fresh complaint evidence, and that the victim's explanation for her delay—fear, trauma, and concern for her family—is readily understandable and supported by scientific consensus that most child victims delay disclosure.

## II.

We are guided by established legal principles developed by our courts concerning the admissibility of fresh complaint evidence. "The determination

9

whether the fresh complaint rule's conditions of admissibility have been satisfied is committed to the discretion of the trial court." C.W.H., 465 N.J. Super. at 600 (quoting State v. L.P., 352 N.J. Super. 369, 380-81 (App. Div. 2002)). Accordingly, an appellate court will review such a determination for an abuse of discretion, which "may be found if the trial court made a 'clear error of judgment.'" Ibid. (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

The fresh complaint doctrine is an exception to the hearsay rule recognized by our Supreme Court that "allows witnesses in a criminal trial to testify to a victim's complaint of sexual assault." Hill, 121 N.J. at 151. For the fresh complaint doctrine to apply, the proponent of the evidence must establish: (1) the victim of the sexual assault disclosed the crime to a natural confidante, whom the victim would ordinarily turn to for support; (2) the disclosure was spontaneous and voluntary; and (3) the disclosure was made within a reasonable time after the alleged assault. State v. R.K., 220 N.J. 444, 455 (2015).

"[F]resh-complaint evidence serves a narrow purpose. It allows the State to negate the inference that the victim was not sexually assaulted because of her [or his] silence." Hill, 121 N.J. at 163. "[T]he purpose of the rule is to prove only that the alleged victim complained, not to corroborate the specifics of the victim's allegations." State v. P.H., 178 N.J. 378, 393 (2004) (citing State v.

Bethune, 121 N.J. 137, 146 (1990)).  Thus, fresh complaint evidence is limited to "[o]nly the facts that are minimally necessary to identify the subject matter of the complaint."  R.K., 220 N.J. at 456; see also Hill, 121 N.J. at 163 (explaining under the fresh complaint doctrine "[o]nly the fact of the complaint, not the details, is admissible").  Accordingly, fresh complaint evidence may not "corroborate the victim's allegations concerning the crime," and the court must "assess . . . whether repeated testimony of the victim's complaint is irrelevant or prejudicial to the defendant."  Hill, 121 N.J. at 169.  To this end, our Supreme Court has explained "courts should instruct the jury of the limited role that fresh complaint evidence should play in its consideration of the case."  Bethune, 121 N.J. at 148.

Because children may be too embarrassed and afraid to discuss sexual abuse, it is necessary to be flexible in the application of the fresh complaint rule for child victims of sex crimes.  Bethune, 121 N.J. at 144.  "[A] substantial lapse of time between the assault and the complaint may be permissible if satisfactorily explainable by the age of the victim and the circumstances surrounding the making of the complaint."  State v. Pillar, 359 N.J. Super. 249, 281-82 (App. Div. 2003).  The lapse between a juvenile victim's complaint and the last act must be, however, adequately explained, State v. W.B., 205 N.J. 588,

11

617 (2011) (recognizing that the two-year delay was justified because the victim was "scared" and in a state of "open rebellion" against her mother) and longer delays typically require a showing of threats or coercion, see, e.g., State v. Hummel, 132 N.J. Super. 412, 423 (App. Div. 1975) (noting that the reason for the victim's delay was because her abuser threatened to put her away in a shelter if she spoke); L.P., 352 N.J. Super. at 384 (finding that the delayed complaint was justified because the victim "continued living with defendant . . . and defendant had warned [her] that he would kill her if she told anyone about the sexual abuse").

In other cases, long disclosure delays have resulted in the exclusion of fresh complaint testimony. See, e.g., Pillar, 359 N.J. Super. at 285 (explaining fresh complaint testimony should have been excluded where the child victim did not disclose the sexual abuse by the defendant until almost nineteen years old, six years after the last assault and the disclosure could not be considered a spontaneous confidential communication).

In the case relied upon by the trial court, the defendant was convicted of several counts of sexual assault, stemming from the sexual abuse of his daughter S.H. from the time she was five in 1988 until she was twelve years old in 1995. C.W.H., 465 N.J. Super. at 585-86. The victim, S.H., alleged she did not reveal

the abuse at the time because the defendant told her not to, she was afraid she would not be believed and would lose her family, and also because the abuse made her feel ashamed and scared and as though she had done something wrong. Id. at 586. S.H. graduated high school in 2002, married in 2004, and joined the military in 2005. Ibid.

In 2010, S.H. disclosed the abuse to her husband and confronted the defendant by email. Ibid. In 2011, she disclosed the abuse to her brother and his wife, V.H. Id. at 587. S.H. reported the abuse to police in 2015, when she was thirty-one years old. Ibid. During a police interview, the defendant gave an incriminating video-recorded statement after which he was arrested and charged. Ibid.

At trial, V.H. testified regarding S.H.'s disclosure to her and her husband. Id. at 584. V.H. stated that the disclosure seemed credible to her because of the defendant's "weird vibes" and her "intuition." Ibid. V.H. related that S.H.'s disclosure prompted a family meeting during which the defendant told her and her husband that he had done something he knew was wrong, but that he was not a molester and that he feared the impact S.H.'s disclosure would have on the rest of the family and on his job as a corrections officer. Id. at 587-88.

A-1165-25

Following his convictions, the defendant appealed, and we reversed. Id. at 585. We held, in pertinent part, that the trial court erred by admitting V.H.'s fresh complaint testimony. Id. at 592-06. We noted that, even affording the reasonable time requirement more flexibly because S.H. was a child at the time of the abuse, the sixteen-year delay rendered S.H.'s disclosure to V.H. "not fresh by any measure." Id. at 600.

### III.

Turning to the State's arguments, we first address its contention that the trial court misapplied the legal standard for admitting fresh complaint testimony because our courts have routinely found disclosures made years after the end of abuse to be reasonably contemporaneous and the delay here was only about 30 days.

Initially, the parties do not dispute the trial court's finding that the first two prongs of the fresh complaint standard have been met by the State. Therefore, our review on appeal is limited to whether the State's evidence met the third prong that the report was made within a "reasonable time." After our careful review of the record, we conclude the State failed to carry its burden to show the victim's reporting of the alleged sexual assaults was made within a reasonable time.

14

We summarize below the incidents of alleged sexual abuse claimed by the victim in support of the State's motion as set forth in the record.

Incident One occurred between September 2001 and March 2002 when the victim was thirteen or fourteen years old. The incidents occurred at defendant's house located across the street from the victim's family home. The victim was paid to clean defendant's house and was alone with him there when the alleged henna tattoo incident occurred. There, the victim alleges defendant digitally penetrated her anus and vagina.

Incident Two occurred in or around 2005 when the victim was approximately 17 years old, wherein the victim alleges defendant committed digital, oral, and vaginal rape on her. The incidents occurred at defendant's house after the victim was directed by her parents to stay at his house while C.H. was in the hospital.

Incident(s) Three comprises several incidents that occurred between 2005 and 2011, wherein the victim complained the defendant continued to inappropriately touch and contact her in a sexual manner and engage in inappropriate conduct, when the victim was 17 to 23 years old. Although the victim turned 18 years of age in 2006, she claims she continued to be under defendant's "power and control" and was afraid to disclose what had been

15

happening to her. The record indicates these alleged assaults occurred often at the victim's house or defendant's house.

Incidents Four and Five allegedly occurred when the victim was 23 and 24 years old respectively wherein "on two occasions, once in 2011 and once in 2012, defendant broke into the victim's bedroom in her parent's home and digitally penetrated her."

Incident(s) Six is comprised of several alleged incidents wherein the victim complained defendant groped her and grabbed her buttocks. These incidents occurred between 2015 and July 2022, when the victim was 27 to 34 years old. The record indicates these incidents occurred primarily in defendant's home after the victim and her husband moved onto defendant's property and into his farmhouse after the victim's father's death in 2015 and continued intermittently thereafter at locations not clear in the record.

Based on our thorough review of the record, we are unpersuaded by the State's argument that because the victim's report was made within approximately thirty days from the last alleged incident of sexual assault that the trial court misapplied the fresh complaint legal standard. We conclude the thirty-day period between the last alleged incident is not the sole dispositive factor in determining whether the victim's disclosure was made within a reasonable time.

16

We also must consider the totality of the circumstances including other evidence in the record to assess whether she had the ability to report all or some of these other incidents in a reasonable time; specifically the dates the other alleged assaults occurred, the victim's age, living situation, her proximity to defendant, and defendant's sphere of influence over her during these times.

In this vein, we note that after the victim reached the age of majority in 2006, she alleges several sexual assaults were perpetrated upon her by defendant. Two of these alleged assaults occurred in 2011 and 2012 when the victim was 23 and 24 years old respectively, when she alleges defendant digitally penetrated her. Thereafter, approximately three years passed until the victim alleged the next sexual assault by defendant occurred through a series of inappropriate sexual touching and groping of her. The record indicates these incidents occurred over a span of approximately seven years when the victim was 27 to 34 years old, at which time she reported the assaults to her husband, sister, and mother, who convinced her to report the alleged sexual assaults to the police.

Although we do not diminish the seriousness of the alleged sexual abuse of the victim when she was a minor, we point out that she reached the age of majority in 2006 before several additional sexual assaults allegedly occurred

17

during her adulthood spanning sixteen years before the report was made to police. Also, the disclosure of the most serious sexual abuse that began in 2001 or 2002 when the victim was a minor and carried into her adulthood in 2012 when she was 24 years old was over ten years before the victim reported the assaults to police.

The record evidence also shows the reasons the victim proffered for failing to timely report the assaults, which she claims were delayed due to her fear and domination by defendant, was not the reason she reported defendant to the police. In her statement to the police she stated:

> His daughter triggered me. His daughter is the same age right now that I was when the assaults started. I started to hear that he was monitoring her phone the same way he did to me and I heard he was telling her the same things he would tell me about being in her phone. She told me that she feels like [defendant] has a camera in her room.

This evidence shows the victim's impetus to report the alleged sexual abuse by defendant was, in large part, based on her fear of her niece being abused by defendant—a recent concern for the victim—which diminishes the weight of her assertion that she did not report the abuse because of her fear and control by defendant.

18

A-1165-25

To the extent defendant alleges the delay in her reporting is accountable to fear or control, we are satisfied the court did not abuse its discretion regarding the September/August 2022 disclosure in light of her contradictory explanation to police. While acknowledging the seriousness of defendant's allegations, we cannot conclude her particularly lengthy delay with respect to the 2022 statements was "adequately explained" in a manner that warrants reversal. W.B., 205 N.J. at 617. Further, in their statements to police, the victim's mother and sister both acknowledged that they witnessed defendant slapping the victim's buttocks on multiple occasions after the victim reached the age of majority, years before her report to police.

We are also satisfied those accusations regarding "threats or coercion," while serious, do not dictate a different outcome. Hummel, 132 N.J. Super. at 423; L.P., 352 N.J. Super. at 384. In her report to the police, the victim stated defendant told her she "could not tell" her friend about the incidents and also told her to "behave," suggesting he would expose a relationship the victim was having with a boyfriend that her parents did not approve. The victim also answered "no," when asked by the police whether defendant used "weapons or threats or physical harm" on her. Although not completely clear in the record, based on the victim's statement to the police, the defendant's statements to her

were made in or around 2005 when the victim was approximately 17 years old. Therefore, the victim's report to the police was made 17 years after the defendant allegedly made these statements to her and 16 years after the victim reached the age of majority. Under the totality of the circumstances noted above, including the significant delay in reporting the alleged abuse after the victim reached the age of majority and the absence of any threats or physical harm, we determine the court did not abuse its discretion in finding the State did not satisfy its burden to show the victim's failure to report the alleged abuse in a reasonable time were due to threats and coercion by the defendant.

We also conclude, based on our above determinations, that the State's contention that the lower court erred by analogizing this case to C.W.H. also lacks merit. We take no umbrage with the court's consideration of the holding in C.W.H. in its analysis, which we note was, to a certain degree, similar to the case at bar. In C.W.H., the court found the victim/declarant was an adult at the time of disclosure, had graduated high school, married and joined the military. Here, the trial court found similarities to the victim who had graduated high school and vocational school, had married, moved away from defendant, and lived independently for a significant period of time prior to the report to police. Further, in C.W.H., there was a 16-year delay in reporting the abuse, similar to

20

the 16-year span from the date the present victim reached majority and the 14-year span from the last alleged sexual penetration committed upon her by defendant.

In sum, the court's denial of the State's motion based on its failure to prove the "reasonably contemporaneous" prong of the fresh complaint legal standard was not an abuse of discretion and was supported by substantial, credible evidence in the motion record.

We now turn to the State's contention that the court erred by finding expert testimony was required to prove the victim's reasons for the delayed disclosure of the sexual abuse. The court found:

> The State, however, offered no expert psychological or psychiatric evidence to support its opinion [that the delay in reporting was reasonable based on the victim's psychological trauma], as would be required under J.L.G., [234 N.J. at 272] and its progeny. Without such information, the case seems more analogous to C.W.H., where declarant was an adult with her own household, than to cases in which the alleged abuser's power and control so dominated declarant (typically a minor) as to render the delay a reasonable one. Accordingly, based upon the record before it, the [c]ourt cannot conclude that the disclosures were "reasonably contemporaneous" to the acts at issue.

Our reading of the trial court's decision does not support the State's argument that the court erred by determining that expert testimony was

21

necessary. We conclude the court addressed the fact that the State did not offer expert testimony concerning the reasons for the victim's delayed reporting but did not explicitly determine expert testimony was required. The court found "without such [expert testimony concerning the reasons for the delayed reporting], the case seems more analogous with C.W.H." We previously determined the court's analogy was not error. In C.W.H., no expert testimony was offered by the State, and we determined "that a sixteen-year delay in the circumstances of this case was not fresh by any measure." C.W.H., 265 N.J. Super at 600. We have no reason to conclude on the record before us that the court did not fully consider the reasons proffered by the State for the delayed reporting by the victim because of the defendant's "power and control" over her. The court specifically found that the victim "eventually married, moved away from her alleged abuser, and lived independently from him," implicitly, if not explicitly, rejecting the State's proffered lay evidence. The record also shows the court's determination was made after fully considering the State's contention that her report was made within 30 days of the last alleged act of abuse after considering the totality of circumstances we referenced herein.

22

To the extent we have not specifically addressed any of the State's remaining legal arguments we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

23